# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**LAWRENCE C. MANION**                                                                **PLAINTIFF**

**V.**                              **No. 4:21-cv-01084-JM-ERE**

**KILOLO KIJAKAZI, Acting**
**Commissioner of Social Security Administration**                    **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.      Introduction:**

On October 2, 2018, Lawrence C. Manion filed a Title II application for a period of disability and disability insurance benefits. *Tr. 15*. On the same day, he filed a Title XVI application for supplemental security income. *Id*. Both applications

alleged disability beginning on October 10, 2015.[1] *Id*. In a February 18, 2021 written decision, an administrative law judge ("ALJ") found that Mr. Manion was not disabled. *Tr. 15-33*. On September 10, 2021, the Appeals Council denied Mr. Manion's request for review, making the ALJ's denial of benefits the Commissioner's final decision. *Tr. at 1-4*. Mr. Manion has requested judicial review.

For the reasons stated below, the Court should affirm the Commissioner's decision.

## II.   THE ALJ's DECISION[2]

The ALJ found that Mr. Manion, who was forty-seven years old on the alleged onset date, had not engaged in substantial gainful activity since May 9, 2018. *Tr. 18, 32*. At step two, the ALJ determined that Mr. Manion has the following severe impairments: osteoarthritis/degenerative disk disease of the lumbar spine, coronary artery disease status post-myocardial infarction and stenting, osteoarthritis of the bilateral hips, bilateral carpal tunnel syndrome status post-surgery, cervical

---

[1] At the administrative hearing, Mr. Manion amended his alleged onset date to May 9, 2018. *Tr. 15*.

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

spondylosis, neuropathy of the bilateral lower extremities, bilateral plantar fasciitis and posterior tibial tendinitis, hypertension, a history of right knee surgery, a clavicle injury, and adjustment disorder with anxiety and depressed mood. *Id*.

The ALJ found that Mr. Manion did not have an impairment of combination of impairments meeting or medically equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 18-21*. Next, the ALJ determined that Mr. Manion had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) only occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling; (2) no climbing ladders, ropes, or scaffolds; (3) only occasional reaching, handling, or fingering duties; (4) no concentrated exposure to temperature extremes, humidity, and hazards (including no driving as part of work); (5) interpersonal contact is routine and tasks involve more than one or two steps, but are not complex; (6) the complexity of tasks is learned by experience and includes several variables and the use of judgment within limits; and (7) the supervision required is little for routine tasks but detailed for non-routine tasks. *Tr. 21*.

At step four, the ALJ found that Mr. Manion was unable to perform any of his past relevant work. *Tr. 31*. At step five, the ALJ found, relying on the testimony of a Vocational Expert ("VE") and considering Mr. Manion's age, education, work experience, and RFC, that jobs existed in significant numbers in the national

economy that Mr. Manion could perform, such as public area attendant, school bus monitor, and counter clerk. *Tr. 32-33*. Accordingly, the ALJ found that Mr. Manion was not disabled. *Id*.

## III.  DISCUSSION

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co.*

4

*v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    **B.**    **Mr. Manion's Arguments for Reversal**

Mr. Manion contends that the evidence supporting the ALJ's decision is less than substantial. He argues that the ALJ: (1) should have further developed the record; and (2) failed to include all of his alleged limitations in the RFC.

    **1.**    **Record Development[3]**

Mr. Manion asserts that his hip and back pain increased after the Disability Determination Services ("DDS") medical experts issued their medical opinions, so the ALJ should have asked for updated opinions.

In April 2019 and June 2019, the DDS experts found that that Mr. Manion could perform light exertional work with postural limitations, based on the fact that Mr. Manion worked after the alleged onset date, had relatively normal clinical examinations, and needed only conservative treatment. *Tr. 139-183*. Mr. Manion treated his pain with narcotics and gabapentin, which he said were moderately effective. *Tr. 517, 580-586*. He also received steroid injections, but did not pursue

---

[3] *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment. The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.") (citations omitted).

any more aggressive treatment. *Tr. 660*. He declined follow-up hip injections until after the hearing. *Tr. 842*. During the relevant time-period, Mr. Manion's doctors repeatedly noted that he was doing well. *Tr. 492, 560-569*. The objective medical evidence did not show significant deterioration of conditions after the DDS medical experts issued their opinions. Mr. Manion's allegations alone, without objective support, are insufficient to support his proposition that the ALJ should have further developed the record.[4]

### 2.     RFC[5]

Mr. Manion asserts that the RFC did not fully incorporate all of his limitations, because it failed to include limitations by his treating physicians. To the contrary, the ALJ considered the treating physician's statement, and explained why he was discounting the statements.

---

[4] Functional limitations must have a basis in the medical evidence and are not established based solely on a claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

[5] *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence."); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) ("In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments.").
An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). Additionally, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

A June 19, 2018 note indicates that Mr. Manion needed a letter for disability and was "no longer able to work." *Tr. 588*. However, it is unclear whether this is a medical opinion or a simple recitation of Mr. Manion's claims. Either way, it is contradicted by the record. Mr. Manion continued to work through at least February 2020. *Tr. 806*.

In October 2018, Mr. Manion was doing well with pain management and injections were helping mitigate pain. *Tr. 579, 660*. In July 2019, Mr. Manion hurt his back and hip while trimming his yard. He told his treating nurse that he was "working toward achieving disability status" but was still working. *Tr. 804*. On August 6, 2019, Mr. Manion asked his treating doctor to fill out disability paperwork. *Tr. 789*. Three days later he returned to the doctor and again wanted to discuss disability paperwork. *Tr. 787*.

In October 2019, Mr. Manion had been "lifting heavy objects" – an 80-pound battery he dropped on his foot – and continued to work. *Tr. 785*. In December 2019, Mr. Manion asked for a cane because he thought it would help him walk. *Tr. 781*. Although the nurse prescribed Mr. Manion a cane, the ALJ noted that this was based on Mr. Manion's request rather than objective medical findings. *Tr. 30*. In October 2020, Mr. Manion requested a walker because he felt unsteady with his cane. *Tr. 816*. However, the only evidence of record supporting the need for a cane or walker was Mr. Manion's subjective complaints. The ALJ noted that the relatively mild

objective findings and conservative treatment failed to support extreme limitations requiring a cane, walker, or knee brace. *Tr. 30*.

Dr. Clark Trapp saw Mr. Manion only a few times, and each time, Mr. Manion asked Dr. Trapp to fill out disability paperwork. *Tr. 787, 836-837*. Dr. Trapp obliged, even though he did not have a long-term treating relationship with Mr. Manion. Dr. Trapp issued two opinion questionnaires (dated January 22 and September 17, 2020) stating that Mr. Manion could not perform even sedentary work, and that he would need four or more unscheduled breaks during a workday. *Tr. 702-704, 810-812*. The ALJ discounted Dr. Trapp's opinion, citing the short treatment history and relatively normal physical examinations by Dr. Trapp. *Tr. 28*. The ALJ again noted that such extreme limitations were inconsistent with Mr. Manion's continued work activity.

Two doctors issued medical statements pre-dating the relevant time-period. In October 2017, Dr. Ronald Revard, a cardiologist, found that Mr. Manion had normal heart rate and sinus rhythm, no murmur, normal EKG, and controlled hypertension. *Tr. 864-866, 525-526*. Yet, Dr. Revard opined that Mr. Manion could only sit for twenty minutes, walk for thirty minutes, and stand for one hour. *Tr. 868*. Notably, all of these limitations were "per patient report." *Tr. 868-873*. The ALJ did not find these restrictions persuasive, because the limitations "were reported by the claimant and were not based on the objective findings" from an examination. *Tr. 28*. The ALJ properly discounted the extreme limitations assessed by Dr. Revard.

In October 2017, Mr. Manion saw neurologist David Oberlander, M.D., for tingling in his hands with radiating neck pain. A nerve conduction study revealed significant nerve compression in the wrists. *Tr. 878*. A clinical exam revealed normal sensation to pin prick and mild weakness in grip, and motor strength was normal in the upper and lower extremities. *Id*. Mr. Manion said that carpal tunnel surgery had helped. *Tr. 604*. However, Dr. Oberlander concluded that Mr. Manion could only occasionally lift and carry 20 pounds and occasionally reach and handle with his hands. *Tr. 876-880*. He also stated that Mr. Manion could never handle or finger. *Id*. The ALJ found that the first limitations were persuasive, but the limitations on handling or fingering were not, because there were no specific objective findings supporting those limitations. *Tr. 29*. An ALJ can discount an opinion partially or in its entirety if it is inconsistent internally or with other evidence. See *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). And, again, Dr. Oberlander's opinion was issued before the relevant time period.

Furthermore, the limitations by Dr. Revard and Dr. Oberlander are contradicted by Mr. Manion's activities. For example, one report indicates that Mr. Manion could never pick up more than 10 pounds and another report says he can never pick up more than 20 pounds. Yet, two years after these reports, Mr. Manion was picking up "heavy objects." *Tr. 785, 868*.

Finally, all of the medical source statements were in check-box form. The Eighth Circuit has held that medical assessments that "consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses, [and] cite no medical evidence and provide little to no elaboration . . . possess 'little evidentiary value.'" *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citing *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). Additionally, when the treating doctor's opinion is only checked boxes without explanation, "that basis alone" is sufficient to support an ALJ giving the "assessment little weight and relying more heavily on other opinions in the record." *Thomas*, 881 F.3d at 675. The ALJ properly addressed the doctors' conclusions and explained his reasons for discounting them.

Mr. Manion suggests that he was more limited in standing and walking than set out in the RFC because he was prescribed assistive devices. The ALJ points out that Mr. Manion asked for these prescriptions, and Mr. Manion's records consist largely of subjective complaints rather than objective evidence pointing to significant standing and walking restrictions. Additionally, the fact that Mr. Manion continued to work into 2020 further undermines his claim that he could not perform the walking and standing required for light work.[6]

---

[6] The controlling regulation defines light work as requiring the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, a

The ALJ fairly and fully evaluated the medical opinions, and, as is his charge, included only those limitations he found credible in the RFC. This was not error.

## VI. CONCLUSION

The ALJ applied proper legal standards in evaluating Mr. Manion's claims, and substantial evidence supports the decision to deny benefits.

The Court should affirm the decision and enter judgment in favor of the Defendant.

IT IS SO ORDERED this 16th day of August, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

good deal of walking or standing, and involving some pushing and pulling of arm or leg controls when sitting most of the time. 20 CFR § 404.1567.